**Duane HARRISON, Plaintiff–Appellant,**

v.

**Wayne BARKLEY, Superintendent of Riverview Correctional Facility; Dr. Robert Hoehn, Dentist at Riverview Correctional Facility; Tammy Bechaz, Inmate Grievance Supervisor; and Sylvia Laguna, Inmate Grievance Director, Defendants–Appellees.**

**Docket No. 97–2286**

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1999

Decided July 17, 2000

Marlene Tuczinski, Assistant Attorney General, Albany, N.Y. (Eliot Spitzer, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Peter G. Crary, Assistant Attorney General, on the brief) for Defendants–Appellees.

Nicomedes Sy Hererra, New York, N.Y. (Charles E. Dorkey III, Todd L. Schleifstein, Haythe & Curley, on the brief) for Plaintiff–Appellant.

Before: MESKILL, JACOBS and LEVAL, Circuit Judges.

MESKILL, Circuit Judge, filed dissenting opinion.

JACOBS, Circuit Judge:

Plaintiff–Appellant Duane Harrison, a prison inmate whose teeth were few and bad, alleges that prison officials refused to treat a cavity in one tooth unless he consented to the extraction of another tooth, which was also diseased but which he nevertheless wished to keep. Harrison pleads that this conduct violated his rights under the Eighth and Fourteenth Amendments and seeks compensatory damages pursuant to 42 U.S.C. § 1983. The United States District Court for the Northern District of New York (Pooler, *J.*) granted summary judgment in favor of the defendants on the ground of qualified immunity, and entered final judgment dismissing the complaint. We hold that if the facts were as plaintiff alleged—that plaintiff sought treatment for a cavity and that the defendants refused all treatment not because he didn't need it but only because he refused consent to the extraction of another tooth—the defendants continued refusal to treat his tooth cavity constituted deliberate indifference to a serious medical need under the Eighth Amendment. Finding no grounds for qualified immunity on this record, the case is remanded for further proceedings consistent with this opinion.

## BACKGROUND

Duane Harrison has only 14 of the normal complement of 32 teeth. He attributes his dental problems to a weakness for candy and other sweets.

**The Dental Complaint.** On June 31, 1994, while incarcerated at Riverview Correctional Facility ("Riverview") in Ogdensburg, New York, Harrison filed a "Dental Request Slip" (as required by prison procedures) reporting that he had a cavity that "need[s] filling," and asking to see a dentist. Riverview was unresponsive, so Harrison submitted two more requests— on August 24 and September 11, 1994— each time complaining of tooth pain. The September slip was politely urgent: "This is my 3rd request in a 3 month period. May I be called in."

On September 15 (ten weeks after his initial request) Harrison was examined by Dr. Hoehn, a dentist employed at Riverview. Harrison reported his tooth pain and requested a filling. After examining Harrison, however, Hoehn refused to fill the cavity on ground that Harrison was also afflicted by an unrelated "carious non-restorable tooth," and that prison regulations required the non-restorable tooth to be extracted before Harrison's cavity could be filled. Harrison did not want the non-restorable tooth pulled, because it was causing him no pain and because he considered that he had no teeth to spare. He asked therefore that the cavity be filled and that the non-restorable tooth be left in place. Hoehn refused, claiming that Riverview policy required the non-restorable tooth to go before the cavity could be filled.

**The Administrative Proceedings.** The next day, Harrison filed a complaint pursuant to Riverview's grievance procedures, requesting that his cavity be filled immedi-

ately and alleging, *inter alia*, that Dr. Hoehn had refused to fill the cavity unless Harrison first agreed to an unwanted extraction. Riverview's Inmate Grievance Resolution Committee (the "IGRC") denied Harrison's grievance. The inmate grievance supervisor, defendant Tommy Bechaz, submitted an investigative report on September 26, 1994, saying that Harrison's cavity could not be treated because Harrison "ha[d] a carious non-restorable tooth which needs to be extracted prior to further treatment." On September 30, 1994, Harrison appealed the IGRC's decision to defendant Superintendent Wayne Barkley, who upheld the decision claiming that "[i]t is the Dentist's policy to take care of the most serious dental problems first."

On a final administrative appeal to the Central Office Review Committee ("CORC"), Harrison again asked to "have [the] cavity filled." On October 26, 1993, defendant Sylvia Laguna, Acting Director of the Inmate Grievance Program of the CORC, denied the request on the same ground: "[i]t is the dentist's policy to take care of the most serious dental problems first" and that "in accordance with the Health Services Policy Manual an infection is considered a class 4 treatment priority and takes precedence over a routine cleaning, classified as a 2 in priority." It is not clear why this order spoke of "routine cleaning" when Harrison's complaint unmistakably referred to a cavity.[1]

The position of the defendants, as it appears from the present record, was that Harrison's cavity would not be treated unless and until he agreed to the unwanted extraction.

**The State Court Proceeding.** On December 6, 1994—five months after his initial request for an examination and after administrative appeals all had been exhausted—Harrison commenced an Article 78 proceeding in New York State Supreme Court. The proceeding was successful, and the court ordered that the cavity be filled. Harrison's cavity was filled on June 7, 1995, nearly a year after his first request.

**The District Court Action.** Harrison (*pro se*) filed a § 1983 complaint in district court on July 17, 1995, alleging that the defendants refused to treat his tooth cavity unless he first submitted to the extraction of a non-implicated tooth. Defendants moved for summary judgment on their qualified immunity defense, among other grounds. In opposition, Harrison submitted affidavits and memoranda, contending:

(1) that he had "been subjected to endure unbearable pain and suffering since September of 1994" until June of 1995;

(2) that his pain was "the result of the defendant[s'] depriving plaintiff, intentionally, of adequate medical care";

(3) that Dr. Hoehn's refusal to fill his cavity "went against DOCS [Department of Correctional Services] policy";

(4) that he was not provided with pain medication and resorted to taking Advil and Tylenol which had been provided for "other ailments"; and

(5) that at the time of Dr. Hoehn's examination, the cavity "had plainly and clearly pierced the tooth enamel [and the] nerve ending [was] exposed."

The principal evidence submitted by the defendants was an affidavit from the dentist who ultimately filled Harrison's cavity, Dr. Mirza, who averred that Harrison's cavity was "not deep [and][n]o nerve was exposed," and that his examination and treatment of the patient revealed no indication that Harrison's tooth pain had been caused by the cavity—although he did allow that the cavity might be causing Harrison "slight sensitivity."

---

1. Defendants' corollary argument that "all inmates sign interview slips saying they are in pain with the obvious attempt to leapfrog others who are patiently waiting," is not addressed to the issue on appeal. Prioritizing treatment out of administrative necessity is one thing; it is another thing to refuse treatment of a serious condition for that reason.

The district court credited the findings of Magistrate Judge Scanlon, and granted summary judgment in favor of the defendants on the ground of qualified immunity, as follows:

> Defendants are entitled to qualified immunity in this case because they demonstrated that the particular factual circumstances made it "objectively reasonable" for them to believe that their actions were lawful. The DOC's policy is to treat a prisoner's most serious medical condition first. Dr. Hoehn, based on his medical judgment, identified Harrison's most serious medical condition and recommended that action be taken to correct that problem. Harrison refused this medical advice. It is well established that a prisoner has no right to choose a specific form of medical treatment. Moreover, even if it was negligent of defendants to insist on treating Harrison's most serious medical need first, mere negligence in treatment does not support Harrison's claim that defendants violated his rights.

*Harrison v. Barkley*, No. 95–CV–964 (RSP/DS), op. at 6 (N.D.N.Y. April 11, 1997) (internal citations omitted). Harrison appeals.

We hold that the refusal to treat an inmate's tooth cavity unless the inmate consents to extraction of another diseased tooth constitutes a violation of the Eighth Amendment. Although a tooth cavity is not ordinarily deemed a serious medical condition, that is because the condition is readily treatable. Unless the cavity is treated, however, the tooth will degenerate, probably cause severe pain, and eventually require extraction and perhaps further extraordinary invasive treatment. The present record allows the inference that for nearly a year, the defendants refused treatment unless Harrison consented to an unwanted extraction, and would have continued to do so indefinitely had they not been required by court order to give treatment. Assuming these facts to be true, as we must for purposes of this mo-

tion, the defendants are not entitled to qualified immunity.

## Discussion

We review *de novo* the grant of summary judgment, applying the same standard employed by the district court to determine whether summary judgment is appropriate. *See Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan,* 7 F.3d 1091, 1094 (2d Cir.1993). Here, we must determine whether there existed genuine issues of material fact as to the merits of Harrison's Eighth Amendment claim and whether the defendants were entitled to judgment as a matter of law on the ground of qualified immunity. *See* Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All ambiguities and all reasonable inferences must be drawn against the defendants. *See Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 166–67 (2d Cir.1991).

### A. Eighth Amendment

To state a claim under § 1983 for deprivation of medical treatment in violation of the Eighth Amendment, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). The record here raises genuine issues of fact concerning both need and indifference.

### 1. Serious Medical Need

A serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance,* 143 F.3d at 702 (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir.1997)) (internal quotation marks omitted). In *Chance,* we held that dental conditions (like other medical conditions) vary in severity and that a decision to leave a condition untreated will

be constitutional or not depending on the facts of the particular case. Thus, a prisoner with a hang-nail has no constitutional right to treatment, but if prison officials deliberately ignore an infected gash, "the failure to provide appropriate treatment might well violate the Eighth Amendment." *Chance*, 143 F.3d at 702 (citations omitted).

█ Ordinarily, a tooth cavity is not a serious medical condition, but that is at least in part because a cavity is so easily treatable. Absent intense pain or other exigency, the treatment of a cavity (in or out of prison) can safely be delayed by the dentist's schedule or the patient's dread or neglect, can be subject to triage or the management of care, can be mitigated or repaired temporarily, and can be coordinated with other related conditions that need to be treated together. Nevertheless, a tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction. *See* 1993 Public Health Reports 1993, U.S. Department of Health and Human Services, Pub. No. 108: 657–672, *Toward Improving the Oral Health of Americans: an Overview of Oral Health Status and Care Delivery* 3 ("Dental caries is a progressive disease process. Unless restorative treatment is provided, the carious lesion will continue to destroy the tooth, eventually resulting in pain, acute infection, and costly treatment to restore the tooth or have it removed."); *e.g.*, Edwina Kidd and Sally Joyston–Bechal, *Essentials of Dental Caries: The disease and its management* 45 (1997) ("[T]he 'point of no return' [for a carious lesion] where we can no longer hope for arrest .... is when a cavity is present....."). Consequently, because a tooth cavity will degenerate with increasingly serious implications if neglected over

sufficient time, it presents a "serious medical need" within the meaning of our case law. *See Chance*, 143 F.3d at 702–03. In this case, moreover, a risk that might ultimately lead to the unnecessary loss of an easily reparable tooth was particularly serious because the plaintiff had so few teeth to spare.

This is *not* a case of *delayed* treatment as the dissent suggests. Defendants' conduct on this record can be construed as: (1) a flat refusal of medical treatment for a condition that if left untreated is serious and painful; or (2) a conditional refusal of such treatment, subject to Harrison's consent to undergo an unwanted medical procedure that would deprive him of a body part he wished to keep. Either way, a reasonable jury could find that Harrison was *refused treatment* of a degenerative condition that tends to cause acute infections, debilitating pain and tooth loss if left untreated. On these facts, we find that Harrison was suffering from a sufficiently serious condition as defined in this Circuit. *See Chance*, 143 F.3d at 702 (defining as "serious" conditions that "a reasonable doctor or patient would find important and worthy of comment or treatment" (internal quotation marks omitted)).[2]

### 2. Deliberate Indifference

█ To establish deliberate indifference, the plaintiff must prove that "the prison official knew of and disregarded the plaintiff's serious medical needs." *Chance*, 143 F.3d at 703 (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Deliberate indifference will exist when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847, 114 S.Ct. 1970; *see also Hathaway v. Coughlin*, 37 F.3d

---

**2.** The dissent's discussion of the proper treatment for dental cavities has no bearing on the issue raised by Harrison's claim, which is not that he was refused a filling because another course was medically preferable, but rather that he was refused any treatment, based on the purported requirement of an administrative guideline that he first consent to the extraction of another tooth.

63, 66 (2d Cir.1994) ("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.").

■ Harrison has adduced evidence to show (1) that his cavity was left untreated for one year and (2) that it would have remained untreated indefinitely or permanently absent (a) court-ordered treatment or (b) Harrison's consent to extraction of the non-implicated tooth. District courts in this Circuit have ruled that a one-year delay in treating a cavity can evidence deliberate indifference on the part of prison officials, *see Dean v. Coughlin,* 623 F.Supp. 392, 402–403 (S.D.N.Y.1985); *see also Williams v. Scully,* 552 F.Supp. 431, 432 (S.D.N.Y.1982) (finding a material issue of fact as to deliberate indifference after an inmate was made to wait five and a half months for refilling of a cavity, resulting in infection and loss of the tooth), and we have reversed a grant of summary judgment "where there is an underlying dispute as to whether legitimate medical claims were deliberately disregarded as punishment . . . *or for other invalid reasons.*" *Archer v. Dutcher,* 733 F.2d 14, 17 (2d Cir.1984) (emphasis added); *see, e.g., Dean,* 623 F.Supp. at 403–404 ("Even if prison officials give inmates access to treatment, they may still be deliberately indifferent to inmates' needs if they fail to provide prescribed treatment."). It follows that (1) outright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated *and* (2) imposition of a seriously unreasonable condition on such treatment, both constitute deliberate indifference on the part of prison officials.

A rational jury could find that the named defendants in this case were deliberately indifferent to Harrison's serious medical needs. The affidavit of Dr. Mirza, who filled Harrison's tooth (a year after Harrison's consultation with Dr. Hoehn), minimizes the extent of decay and raises a doubt as to Harrison's claim that his suffering was attributable to the untreated cavity (which, in Dr. Mirza's judgment would have produced no more than a sensitivity). Dr. Hoehn accounts for his decision to refuse treatment of the cavity on the basis that the non-restorable tooth was potentially "life threatening." But Hoehn first mentions this finding after the state court ordered that the cavity be filled; it was not recorded in a contemporary notation, and it is not confirmed by the Mirza affidavit. Moreover, none of the named defendants present evidence suggesting that they *ever* intended to treat Harrison's cavity absent his consent to the unwanted extraction. On the whole, the defendants' evidence does not foreclose a genuine issue of fact on this material issue.

### B. Qualified Immunity

■ The defendants enjoy qualified immunity from Harrison's suit if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and are entitled to summary judgment if when "looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[ ]," it was objectively reasonable for the defendants to believe that their conduct or actions did not violate an established federally protected right, *see Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (quoting *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir. 1986) (Scalia, *Circuit Justice* ) (internal quotation marks omitted)).

In ruling that the defendants enjoy qualified immunity, the district court made three points: (1) that mere negligence is not a violation of an Eighth Amendment right; (2) that the defendants followed departmental treatment prioritization policy; and (3) that prison inmates have "no right to choose a specific form of medical treatment." We are unpersuaded that any of these points compel a finding that the defendants are qualifiedly immune on this record. The defendants might ultimately

be entitled to qualified immunity if the basic facts alleged by Harrison prove to be different—if for example Harrison had no cavity or if the defendants did not know he had one—but as far as this motion for summary judgment is concerned, the district should have denied it.

■■■ (1) We agree that the mere malpractice of medicine in prison does not amount to an Eighth Amendment violation. *See Estelle,* 429 U.S. at 107, 97 S.Ct. 285; *Hathaway,* 37 F.3d at 66. This principle may cover a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady. *See, e.g., Estelle,* 429 U.S. at 105—106, 97 S.Ct. 285 (holding that "inadvertent failure to provide adequate medical care" or "negligen[ce] in diagnosing or treating a medical condition" does not constitute deliberate indifference on the part of prison officials). In this case, Dr. Hoehn can plausibly assert that he had his patient's best interest at heart; but his decision (once Harrison elected to keep the non-implicated tooth) was to adamantly refuse treatment of a properly diagnosed condition that was progressively degenerative, potentially dangerous and painful, and that could be treated easily and without risk. Consciously disregarding an inmate's legitimate medical needs is not "mere medical malpractice." *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) (internal quotation marks omitted).

■■■ (2) The district court emphasized that Dr. Hoehn followed the policy adopted by the Department of Correctional Services ("DOCS") "to treat a prisoner's most serious medical condition first." The department has promulgated a prioritized treatment policy, but defendants have not directed our attention to any policy that requires (or encourages) its dentists or doctors to refuse treatment of an inmate's lower-priority condition unless the inmate agrees to submit to an unwanted treatment of a condition assigned a higher priority. We need not decide therefore whether the defendants would be immune if their decisions had been compelled by departmental policy.

The sections of DOCS Health Services Policy Manual referenced by Dr. Hoehn at Harrison's examination, and by the other defendants at each level of Harrison's administrative appeal, classify dental treatment priorities as follows:

## TREATMENT PRIORITIES– CLASSIFICATION

1. *Emergency Treatment (Class 4):* Cessation of hemorrhage; immediate relief of pain; removal of oral infections that may endanger the health and welfare of the patient. . . .

2. *Essential Treatment (Class 3):* The early treatment of conditions of an urgent nature, including: restoration of teeth that are severely carious where lack of their restoration would soon lead to their extraction; extensive or advanced periodontal disease; chronic pulpal or apical infection . . . . [etc.]

3. *Routine Treatment (Class 2):* The treatment of conditions not of an urgent nature but requiring preventive or corrective measures, including routine restorations . . . . and/or periodontal disease not extensive or advanced.

The policy manual thus undertakes to establish the priority in which conditions will be treated; it does not require or contemplate the *denial* of treatment recognized to be needed, beneficial and feasible, or the denial of treatment for one condition if the patient elects to forgo treatment for another.

To the contrary, the policy manual elsewhere states that inmates should not be encouraged or coerced to accept unwanted treatment: "[m]ajor medical treatment

may be administered only on the basis of written informed consent"; "each patient with the mental capacity to make a judgment is entitled to refuse medical treatment"; "[a]ny decision made by a patient with capacity is to be respected unless that decision poses a danger to others." Part I, section b, paragraphs 1 and 2 of Item 7.1 of the Manual ("Rights of Patients"). These statements confirm that the policy manual is a rational prescription designed to insure that priority of treatment corresponds to the urgency of the medical needs. Nothing in the manual negates the prisoner-patient's right to refuse undesired treatment or authorizes prison officials to withhold medical treatment needed for one disease unless the patient consents to accept undesired treatment for another.

(3) Finally, the district court's ruling on qualified immunity relies on the principle "that a prisoner has no right to choose a specific form of medical treatment." Maybe so, but the proper *course* of treatment is not at issue in this case. *Cf. United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867 (2d Cir.1970) ("[A] prisoner's right is to medical care—not the type or scope of medical care which he personally desires." (citation and internal quotation marks omitted)). It appears to be uncontested that the indicated treatment for the cavity was a filling, and that the indicated treatment for the non-restorable tooth was extraction. Harrison consented to treatment of one condition and not the other; he never insisted that either condition be treated in some way contrary to a dentist's recommendation.

\* \* \* \* \* \*

In light of the foregoing, and accepting as true (as the court must on the defendants' motion for summary judgment) Harrison's allegations that he sought treatment from the defendants for a cavity, that he was refused treatment for nearly a year unless he consented to the extraction (which he refused) of another decayed tooth, and that the ground for the defendants refusal was that the second decayed

tooth represented a more urgent medical condition than the cavity for which he sought treatment, the defendants are not entitled to dismissal based on qualified immunity. The defendants' motion for summary judgment on this ground should have been denied.

## CONCLUSION

For the reasons stated above, the district court's grant of summary judgment to the defendants is reversed. The case is remanded for further proceedings consistent with this opinion.

MESKILL, Circuit Judge, dissenting:

The Eighth Amendment is violated when prison officials act with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Today, the Court holds that deliberate indifference to a dental cavity violates the Eighth Amendment. I respectfully disagree.

The standard governing Harrison's claim is well established. For Harrison to avoid summary judgment, he must show a material question of fact as to whether Dr. Hoehn or the other defendants acted with " 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (quoting *Estelle*, 429 U.S. at 104, 97 S.Ct. 285) (alteration in original). The standard includes subjective and objective components: "First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the defendant must act with a sufficiently culpable state of mind. An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)) (other cita-

tions and internal quotation marks omitted).

Harrison stated in an affidavit that he had been subjected to "unbearable pain and suffering since September of 1994, until the painful cavity was filled ... on June 7, 1995." Assuming that this assertion creates a material issue of fact as to whether the deprivation was, objectively, "sufficiently serious," it says nothing about whether the defendants knew that Harrison faced "a substantial risk of serious harm." Indeed, there is no allegation, nor evidence of record, indicating that the defendants were aware of Harrison's "unbearable pain and suffering."

On June 31[sic], 1994, Harrison filed a "Dental Request Slip" on which he checked the box "Need Filling." He made no additional notations on the form. On August 24 he filed a second such slip, on which he wrote "tooth pain" next to the box marked "OTHER." On September 11, he filed a third slip, again complaining of "tooth pain" next to the box marked "OTHER."

On September 15, Harrison was seen by Dr. Hoehn. There is no indication that Harrison complained to Dr. Hoehn of "unbearable pain and suffering." Dr. Hoehn refused to fill Harrison's cavity (tooth # 26) because a different tooth (tooth # 18), although asymptomatic, presented the more serious and immediate medical need and required extraction. Nine months later, when Harrison's cavity was filled by Dr. Mirza, the dentist observed only "a small cavity" in tooth # 26 that "was not deep." Dr. Mirza stated in an affidavit:

8. The tooth's dentin, or underlayer of sensitive calcified tissue was not exposed. No nerve was exposed by the cavity. There was no sign of visible decay.

9. While the patient may have experienced slight sensitivity in this tooth, there was nothing revealed during my examination of the patient to indicate a condition in tooth # 26 which would produce tooth pain.

In other words, Dr. Hoehn would not have known from his examination of Harrison's teeth that Harrison was experiencing anything more than "slight sensitivity" in the tooth.[1]

Dr. Hoehn noted in Harrison's record that Harrison refused treatment. On September 23, Dr. Hoehn added a memorandum explaining that Harrison "has a carious non-restorable tooth which needs to be extracted prior to further treatment."

On September 16, Harrison filed a grievance complaining that "Dentist R. Hoehn refused to fill a cavity unless I allowed him to extract a tooth." The complaint did not mention pain. The Inmate Grievance Resolution Committee denied Harrison's grievance, stating that it did not "have the power to ... over ride [sic] the decision of the Dentist." The accompanying investigative report also echoed Dr. Hoehn's memorandum of September 23, informing Harrison, "You have a carious non-restorable tooth which needs to be extracted prior to further treatment." Harrison appealed, first to the prison superintendent, and then to the Central Office Review Committee (CORC). Harrison did not complain of pain on either occasion, and both appeals

---

1. The majority disparages Dr. Mirza's affidavit without explanation, stating that it "minimizes the extent of decay" in tooth # 26. *See* Majority Op. at 138. The only evidence to the contrary, however, is an affidavit submitted by Harrison, in which he stated that "the cavity had plainly and clearly pierced the tooth enamel [sic]" and that "nerve ending[s] were exposed." Assuming that Harrison's self-diagnosis is competent and based on personal knowledge, which is highly unlikely, it is belied by his failure to complain of tooth pain through three levels of administrative appeals or during the course of the proceedings in state court. *See In re Harrison*, # 94–R–1722, at 3 (N.Y.Sup.Ct. May 31, 1995) ("Petitioner's submissions are silent with respect to pain."). In any event, as discussed later in this opinion, the majority does not base its decision on the severity of Harrison's cavity but on its mere existence.

were denied. The superintendent, after repeating that "you have a carious non-restorable tooth which needs to be extracted prior to further dental treatment," further explained, "It is the dentist's policy to take care of the most serious dental problems first." The CORC additionally advised: "[I]n accordance with the Health Services Policy Manual an infection is considered a class 4 treatment priority and takes precedence over a routine cleaning [sic], classified as a 2 in priority."

In sum, Dr. Hoehn knew at most that Harrison had a cavity, causing him "tooth pain." It is not clear that the defendants other than Dr. Hoehn reviewed Harrison's dental request slips during the course of his administrative appeals, and Harrison made no allegation and made no showing that they knew he was experiencing tooth pain. Nevertheless, the majority holds that, "because a tooth cavity will degenerate with increasingly serious implications if neglected over sufficient time, it presents a 'serious medical need' within the meaning of our case law." Majority Op. at 137 (citation omitted). I do not believe that a mere cavity amounts to a "serious medical need."

Indeed, the majority admits as much: "Ordinarily, a tooth cavity is not a serious medical condition." *See* Majority Op. at 137. However, the majority then asserts that "a tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction." *See* Majority Op. at 137. The majority concludes that "a degenerative condition"—even if not ordinarily considered a serious medical condition—amounts to a serious medical condition if it "tends to cause acute infections, debilitating pain and tooth loss if left untreated." *See* Majority Op. at 137 – 38. In short, the *Estelle* standard "deliberate indifference to serious medical needs" has metamorphosed to include "deliberate indifference to non-serious medical needs if they might become serious in the face of deliberate indifference."

The majority's misreading of *Estelle* ignores entirely the reason why denial of medical treatment is cognizable only with respect to serious medical needs: "[S]ociety does not expect that prisoners will have unqualified access to health care, [so] deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citing *Estelle*, 429 U.S. at 103–04, 97 S.Ct. 285). Society's "evolving standards of decency," *id.* at 8, 112 S.Ct. 995 (internal quotation marks omitted), do not require that a prisoner be entitled to treatment for a small cavity, having refused treatment for a different, life-threatening dental condition.

The Supreme Court's decision in *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), is not to the contrary. Although the Court recognized that exposure to second-hand tobacco smoke might "unreasonably endanger[ ]" a prisoner's future health and that therefore an Eighth Amendment violation could be proven, *id.* at 35, 113 S.Ct. 2475, the Court emphasized that it would still be necessary for the prisoner to prove that involuntary exposure to second-hand smoke was "contrary to current standards of decency." *Id.* Thus, the Court in no way sanctioned the wholesale extension of *Estelle* adopted here.

Aside from my disagreement with the majority's misreading of *Estelle*, I find the majority's conclusion untenable as a matter of fact and reason. The majority asserts that a tooth cavity is a degenerative condition "likely" to produce agony and other serious consequences, so that the refusal to treat amounts to an Eighth Amendment violation. To support its view, the majority cites *Toward Improving the Oral Health of Americans*, a government report whose bias is evident from its title. *Cf. Rhodes v. Chapman*, 452 U.S. 337, 348 n. 13, 101 S.Ct. 2392, 69 L.Ed.2d

59 (1981) (observing that "opinions of experts ... simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question" (internal quotation marks omitted)). The majority's view, however, has been characterized as "ignorant" by respected medical authority. *See Textbook of Cariology* 295 (Anders Thylstrup & Ole Fejerskov eds., 1986) (discussing hypothetical dentist who "is ignorant of current knowledge of dental caries and accordingly regards surgical treatment [such as filling of dental caries] as the most realistic way of stopping caries progression"). To the contrary, it may be perfectly reasonable for a dentist *not* to fill a cavity, especially where it is "not deep" and the dentin is not involved. *See id.* at 294 ("[I]t seems justified for the regular dental visitor to expect that dental health delivery as provided by the dentist in principle is aimed at control of caries progression without surgical treatment."); *see also* Lloyd Baum *et al., Textbook of Operative Dentistry* 15 (2d ed.1985) (noting that surgical intervention is usually required "*after* the enamel has been penetrated and dentin is involved" (emphasis added)).

I am also unmoved by the majority's *ipse dixit* assertion that the risk here "was particularly serious because the plaintiff had few teeth to spare." Majority Op. at 137. I suspect that dentistry cannot be reduced so easily to a numbers game, and that the medical significance of any given tooth depends heavily on the condition of the patient's adjacent and opposing teeth and on the availability of dental prosthetics. To be sure, I am not an expert in the field of dentistry, and I assume that the proper treatment of dental caries is a debatable point among dentists of reason. But, as a consequence, I think it imprudent for this Court to hold that the defendants can be liable for violating Harrison's Eighth Amendment rights, knowing only that Harrison's cavity was not filled promptly.

Even if this Court had a bevy of experts—which it does not now have—proclaiming in unison that "dental cavities degenerate and must be filled, or they are likely to produce agony," I still would not agree with the majority's conclusion because it interferes unjustifiably with the prison dentist's judgment and decision-making.

The majority assumes a niggardly view of the dentist's role and the deference that courts owe to a treating dentist's medical judgment and decision-making. The majority assumes that Harrison has two separate dental problems and implies that they ought to have been addressed independently by Dr. Hoehn: "It appears to be uncontested that the indicated treatment for the cavity was a filling, and that the indicated treatment for the non-restorable tooth was extraction." *See* Majority Op. at 140. However, a dentist should be allowed to formulate a patient's treatment plan based on the patient's overall dental health, not only on the health of individual teeth. *See* Robert B. Morris, *Strategies in Dental Diagnosis and Treatment Planning* 129 (1999) (basing treatment planning on the establishment of a "healthy oral environment"). Indeed, "[i]t is a careful and wise dentist who protects the oral health of his patients rather than serving only as a repairman for damaged teeth." *Textbook of Operative Dentistry, supra,* at 1. "Even when a patient presents on an emergency basis for diagnosis and treatment of one problem tooth, treatment must be harmonized with the findings and needs of the total oral cavity and of the patient as a whole." Norman K. Wood & Gerard Byrne, *Treatment Planning in Dentistry* 6, in 1 *Clark's Clinical Dentistry* (Jefferson F. Hardin ed., rev. ed.1996).

This is not an over-idealized, ivory tower view of the patient-dentist relationship that bears no application to the nitty gritty world of prison health care and the Eighth Amendment. To the contrary, it is rooted in the Eighth Amendment and the "deliberate indifference" standard itself. The

Eighth Amendment "bans only cruel and unusual *punishment.* If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." *Wilson v. Seiter,* 501 U.S. 294, 300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A prison health care provider simply does not have the requisite "mental element" to be guilty of an Eighth Amendment violation when he or she acts, motivated by the best interests of the patient. In this case, Dr. Hoehn refused to treat a small cavity, motivated by a medically justified concern that a different dental condition was life threatening and required immediate treatment. Dr. Hoehn cannot be said to have disregarded "an excessive risk to inmate health or safety," and consequently he is not guilty of deliberate indifference. *See Farmer,* 511 U.S. at 837, 114 S.Ct. 1970.[2]

Of course, a private patient has the right to reject a proposed plan of treatment and may demand that elective procedures be performed first, even before other, urgently needed procedures. After all, it is the patient's time and money that are at stake. *See Strategies in Dental Diagnosis and Treatment Planning, supra,* at 11–12. That calculus changes when the patient is a prisoner. In that case, the patient is entitled to basic medical care, but he has no right to dictate the "type or scope" of care that he receives. *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864, 867 (2d Cir.1970) (internal quotation marks

omitted). Dr. Hoehn examined Harrison and determined that Harrison's dental well-being required treatment of one tooth before the other. We ought not impose our understanding of sound dental practices over Dr. Hoehn's exercise of professional judgment.

For the foregoing reasons, I believe the defendants are entitled to summary judgment on Harrison's Eighth Amendment claim, and I would therefore affirm the district court. Also, as noted earlier, the majority's reading of *Estelle* is novel, inasmuch as it extends "serious medical needs" to include non-serious medical needs that are "likely" to degenerate and to result in pain or serious complications if left untreated. Defendants cannot be expected to foresee novel extensions of existing law. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Therefore, it cannot be said that the defendants were violating Harrison's "clearly established constitutional rights," *see Weyant v. Okst,* 101 F.3d 845, 857 (2d Cir. 1996). I would also affirm on the grounds that the defendants are entitled to qualified immunity.

---

**2.** The majority denies that Dr. Hoehn's medical judgment is at issue here, asserting instead that Harrison was denied treatment solely "based on the purported requirement of an administrative guideline that he first consent to the extraction of another tooth." Majority Op. at 137 n. 2; *see also id.* at 134 ("Hoehn refused, claiming that Riverview policy required the non-restorable tooth to go before the cavity could be filled."). However, the record is to the contrary. Dr. Hoehn never claimed that an administrative policy required denial of treatment; he only stated that Harrison "has a non-restorable tooth which needs to be extracted prior to further treatment." The Inmate Grievance Resolu-

tion Committee denied Harrison's grievance, stating that it did not "have the power to ... over ride [sic] *the decision of the Dentist"* (emphasis added), and the superintendent additionally observed that it was "the *dentist's* policy to take care of the most serious dental problems first" (emphasis added). To be sure, the CORC subsequently cited the Health Services Policy Manual, but to say that a dentist's medical judgment is *consistent* with an administrative policy is not to say that no medical judgment was ever involved. *See also In re Harrison,* # 94–R–1722, at 2 (referring to defendants' argument that *"the dentist's professional judgment was not inconsistent* with the Department's policy manual").