Charles ISELEY, SR., et al., Plaintiffs,

v.

Martin DRAGOVICH, et al., Defendants.

No. CIV.A. 00–4839.

United States District Court, E.D. Pennsylvania.

Dec. 10, 2002.

---

Charles Iseley, Sr., Waynesburg, PA, for Plaintiff.

Sue Ann Unger, Office of Atty. General, Philadelphia, PA, Patrick J. McMonagle, Office of Atty. General, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, Judge.

### I. INTRODUCTION

Plaintiff Charles Iseley, Sr. ("plaintiff") is an inmate at the Pennsylvania State Correctional Institution at Green. Plaintiff suffers from Hepatitis C, a common viral infection of the liver which can cause liver cancer. Plaintiff asserts that for over four years he has repeatedly requested from prison officials to be treated for Hepatitis C, but has yet to receive such treatment.

In response to plaintiff's request, the Department of Corrections ("DOC") directed that he submit to a psychological evaluation and sign a Mental Health Informed Consent Document ("consent form")[1] before his requested treatment could proceed. As part of plaintiff's psychological evaluation, plaintiff is required to complete a Beck Depression Inventory ("BDI questionnaire"), which consists of a series of questions designed to help evaluate whether plaintiff suffers from depression, and to sign a consent form authorizing the release of certain medical and personal information.

---

1. This document allows limited disclosure of plaintiff's medical records.

The DOC asserts that plaintiff's treatment cannot proceed without plaintiff first undergoing the psychological evaluation. This is so, according to the DOC, because medicinal treatment for Hepatitis C can cause severe psychological side effects, and the likelihood that plaintiff will experience these side effects must be assessed before treatment can be administered. The DOC contends that, without a psychological evaluation, the proper course of treatment cannot be ascertained. Moreover, defendants[2] refuse to treat plaintiff without first obtaining a signed consent form. According to defendants, the consent form authorizes the DOC to release plaintiff's medical and personal information in order to protect other inmates and staff, and to insure the orderly operation of the prison facility.

Plaintiff, on the other hand, refuses to submit to the psychological evaluation as a condition for receiving treatment for Hepatitis C and also refuses to sign the consent form.

Plaintiff brings this action under 42 U.S.C. § 1983 claiming that defendants have acted with deliberate indifference towards his serious medical needs. Before this court is plaintiff's pro se request for a preliminary injunction. The parties have made extensive and highly detailed written submissions (*see* doc. nos. 96, 97, 102, 103, 104 for plaintiff and doc. No. 100 and non-commonwealth defendants' response to plaintiff's motion, which has yet to be docketed, for defendants) and the court heard argument. For the reasons that follow, plaintiff's request for injunctive relief will be denied.

**2.** Plaintiff brings this action against a number of defendants, including prison institutions, officials and employees, as well as other individuals alleged by plaintiff to be liable for

## II. DISCUSSION

■ The Third Circuit recently restated the factors a court must consider and the burden a party must meet in order to obtain injunctive relief:

> [t]o obtain an injunction, the plaintiff[ ] [has] to demonstrate (1) that [he is] reasonably likely to prevail eventually in the litigation *and* (2) that [he is] likely to suffer irreparable injury without relief. If these two threshold showings are made[,] the District Court then considers, to the extent relevant, (3) whether an injunction would harm the [defendant] more than denying relief would harm the plaintiff[ ] and (4) whether granting relief would serve the public interest.

*Tenafly Eruv Assoc., Inc. v. Borough of Tenafly*, 309 F.3d 144, 2002 WL 31388923 at *6 (3d Cir. October 24, 2002) (citing *S. Camden Citizens in Action v. N.J. Dep't of Envtl. Protection*, 274 F.3d 771, 777 (3d Cir.2001) and *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir.2000)) (internal citations omitted). In other words, the movant must establish a likelihood of success on the merits and a likelihood that he will suffer irreparable injury if the requested relief is not granted before the court can even consider public interest and the balance of hardships. *See id.*

For the purpose of deciding the instant motion, the court will assume that plaintiff can show that he will suffer irreparable harm if he is not treated for Hepatitis C. More problematic, however, is the likelihood that plaintiff will ultimately succeed on the merits of the instant litigation.

To state a claim under 42 U.S.C. § 1983 for deprivation of medical treatment in

failing to provide plaintiff with adequate medical treatment. For the purposes of this opinion, the various individual defendants are referred to collectively as "defendants."

violation of the Eighth Amendment, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The defendants acknowledge that medical treatment for Hepatitis C constitutes a serious medical need under *Estelle.* They contend, however, that they did not act with deliberate indifference towards plaintiff's need for treatment.

To prove deliberate indifference, plaintiff must establish that defendants knew that plaintiff faced a "substantial risk of serious harm," but disregarded "that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see Singletary v. Pa. Dept. of Corrections,* 266 F.3d 186, 193 n. 2 (3d Cir. 2001) (stating that the general standard for a § 1983 deliberate indifference claim is set forth in *Farmer*). For the purpose of deciding whether injunctive relief is appropriate at this stage of the litigation, the court will assume that defendants knew of the "substantial risk of serious harm" to plaintiff. Accordingly, the precise issue before the court is whether plaintiff has established a reasonable likelihood that he

will ultimately prevail on the issue of whether defendants took reasonable measures to abate the risk posed to plaintiff as a result of his need for Hepatitis C treatment.

A. *The Requirement that Plaintiff Submit to a Psychological Evaluation before he can Receive Medicinal Treatment for Hepatitis C is Reasonably Related to a Legitimate Penological Interest.*

It is uncontested that plaintiff has sought medical treatment for a significant period of time. Defendants explain, however, that they agreed to provide the requested treatment, but informed plaintiff that he would have to undergo a psychological evaluation and sign a consent form before medicinal treatment could begin. Plaintiff refused. Accordingly, defendants contend that, it is plaintiff who has delayed treatment by refusing to submit to the psychological evaluation, which includes completion of the BDI questionnaire, and by refusing to sign the consent form.

Defendants further explain that DOC policy requires that all treatment of Hepatitis C begin with a psychological evaluation of the patient.[3] The purpose of this

---

**3.** In support of this assertion, the defendants direct the court to the DOC Protocol for Hepatitis C ("Protocol"), which was provided to the court by plaintiff. *See* Plaintiff's Reply Brief for Motion for Temporary Restraining Order and/or Preliminary Injunction, Exhibit 1 at 1 (doc. no. 103). The Protocol is in the form of a flow chart. The sixth step of the protocol addresses various reasons why a patient is to be excluded from treatment. One of the reasons listed is "psychiatric." The protocol directs us to Attachment C. *See Id.* Attachment C is entitled "Exclusionary Criteria for Psychiatry." *See Id.* at 5. The document lists a number of psychiatric disorders that would serve as grounds for exclusion from treatment, of which depression is one, and directs that certain factors be considered

in assessing whether the patient meets any of the exclusionary criteria.

Plaintiff correctly points out that neither the protocol nor the attachments thereto make any specific reference to the BDI questionnaire. However, Attachment C to the protocol clearly identifies certain psychological conditions which, if present, would serve to exclude certain patients from treatment. Brian Hyde, the Corrections Health Care Administrator at the State Correctional Institution at Greene, the institution at which plaintiff is currently incarcerated, has stated, under penalty of perjury, that the BDI questionnaire is consistently relied upon to help determine whether a particular individual meets any of the exclusionary criteria. *See* Declaration of Brian Hyde, *attached to* Commonwealth Defendants' Supplemental Response in Opposi-

requirement is to enable medical personnel to determine if there is a risk that the patient will suffer certain psychological side effects from receiving Hepatitis C medication,[4] and, in turn, to calibrate the course of treatment accordingly. The DOC further asserts that it cannot make an exception to this policy because the administration of Hepatitis C treatment without first conducting a psychological evaluation would put plaintiff and other inmates and staff at risk. Finally, concern for the integrity of a fair and uniform policy that applies to all inmates, given the reported outbreak of Hepatitis C among prison populations, is particularly relevant to this case.[5]

Plaintiff, on the other hand, contends that the DOC's requirement that he complete the BDI questionnaire is unreasonable and unlawful because: 1) it requires plaintiff to involuntary submit to unwanted mental health treatment and 2) it forces plaintiff to submit to unwanted treatment in order to receive required treatment.

### 1. Plaintiff's right to decline unwanted medical treatment.

While plaintiff is correct in his assertion that a prisoner "possesses a significant liberty interest in avoiding the unwanted administration of" mental health treatment, *Washington v. Harper*, 494 U.S. 210, 221–22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990),or, for that matter, any other type of medical treatment, *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir.1990), a prisoner's right to refuse such treatment is limited.[6] *See id.* As stated by the Third Circuit, "a prison may compel a prisoner to accept treatment when prison officials, in the exercise of professional judgment, deem it necessary to carry out valid medical or penological objectives." *Id.* The proper inquiry is "whether the regulation [at issue] is reasonably related to legitimate penological interests." *Washington*, 494 U.S. at 223, 110 S.Ct. 1028 (internal quotations omitted).

In answering this question, the Supreme Court has instructed that courts should weigh the following four factors, commonly referred to as the *Turner* factors, *see Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987): 1) whether there is "a rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," so that the policy is not rendered "arbitrary or irrational;" 2) "whether inmates retain alternative means of exercising the prescribed right;" 3) "the costs that accommodating the right would impose on other inmates, guards, and prison resources;" and 4) "whether there are alternatives to

tion to Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (doc. no. 100).

Plaintiff puts forth no evidence that the DOC's reliance on the BDI questionnaire is unreasonable and that, therefore, it should not be used for the purpose of determining whether an individual should be excluded from treatment.

**4.** Specifically, defendants assert that the medication used to treat Hepatitis C can cause severe depression in certain individuals.

**5.** *See, e.g.*, Mark Fazlollah and Jennifer Lin, *Inmates Will Get Care for Hepatitis*, The Philadelphia Inquirer, October 31, 2002; Fazlollah and Lin, *New Jersey Prisons Fail to Treat an Epidemic*, The Philadelphia Inquirer, July 21, 2002.

**6.** It is unclear whether the DOC requirement that

plaintiff submit to a psychological evaluation before treatment for Hepatitis C can continue even constitutes "medical treatment." However, in light of the above discussion regarding the severity of the limitation on plaintiff's right to refuse such treatment, the court has declined to address this issue.

the regulation that fully accommodate the prisoner's rights at de minimis cost to valid penological interests." *Doe v. Delie*, 257 F.3d 309, 317 (3d Cir.2001). (citing *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc)).

■ With regards to the first *Turner* factor, defendants have offered evidence to support a medically legitimate justification for the policy, i.e., the need to enforce an appropriate medical protocol which protects inmates from the psychological side effects that can be caused by medicinal treatment of Hepatitis C. In turn, plaintiff presents no evidence to refute defendants' assertion that treatment for Hepatitis C can cause severe psychological side effects, and that therefore, a psychological evaluation is necessary to determine the best course of treatment for that individual.[7] Accordingly, and in light of the deference that is to be given to the professional judgment of prison medical personnel, *see White*, 897 F.2d at 113, the court finds that the requirement that plaintiff undergo a psychological evaluation prior to receiving treatment for Hepatitis C, is reasonably related to a legitimate penological interest.

The second *Turner* factor, regarding alternative means that are available to the prisoner for exercising the constitutional right in question, i.e., the right to decline medical treatment, is not applicable to these facts.

Under the third *Turner* factor, the court finds that accommodating plaintiff would indeed impose significant costs on both, prison resources and the plaintiff. Plaintiff himself has provided the court with information concerning the severe psychological side effects that can result from medical treatment of Hepatitis C. *See*

Hepatitis C Patient Handout at 5–6, *attached to* Plaintiff's letter to the court dated November 14, 2002 (describing psychological risks associated with treatment of Hepatitis C). The purpose of the psychological evaluation is to help determine the likelihood that plaintiff may, in fact, develop one of these side effects. The actual risks to the inmate—depression, confusion, psychosis, aggression, etc.—and to other inmates and staff are indeed substantial. Should these side effects materialize, the correctional authorities would be forced to bear the cost of treating plaintiff not only for Hepatitis C, but also for the psychological side effects that may have been avoided through proper evaluation.

With regards to the fourth factor, the court concludes that there are no alternative courses of action that would fully accommodate the plaintiff's right to avoid unwanted medical treatment without substantially affecting the penological interests involved herein.

After giving due consideration to the *Turner* factors, the court concludes that the requirement that prisoners submit to a psychological evaluation before being treated for Hepatitis C is reasonably related to legitimate penological interests.

2. *Plaintiff's right to avoid submitting to unwanted medical treatment in order to receive required treatment.*

Plaintiff's argument that he cannot be forced to submit to unwanted treatment in order to receive required treatment, *see Harrison v. Barkley*, 219 F.3d 132, 138–140, (2d Cir.2000), also fails. First, it fails for the same reasons stated above regarding plaintiffs right to refuse unwanted

---

7. In fact, in an attachment to a letter to the court from plaintiff dated November 14, 2002, plaintiff provides evidence of the many serious potential side effects of Hepatitis C treat-

ment. *See* Hepatitis C Patient Handout at 5–6, *attached to* Plaintiff's letter to the court dated November 14, 2002.

medical treatment. Secondly, reliance on *Harrison* is misplaced. In this case, unlike in *Harrison,* where the medical procedures in question were two distinct and separate procedures and where there was no legitimate penological reason for requiring one procedure to be done before the other,[8] the requirement that plaintiff submit to a psychological evaluation is part and parcel of the treatment that plaintiff is requesting. Absent evidence from the plaintiff that the treatment prescribed by the DOC protocol is either unreasonable or in error, the court will not second-guess the professional judgment of prison medical personnel.[9] *See White,* 897 F.2d at 113.

B. *Plaintiff's Right to Privacy in His Medical Records.*

Plaintiff also contends that the DOC requirement that plaintiff sign a consent form before he can be treated for Hepatitis C is unreasonable and unlawful because: 1) plaintiff has a right to his medical privacy and 2) prison officials cannot refuse necessary medical treatment by first requiring plaintiff to sign a waiver.

Plaintiff correctly asserts that prisoners have a constitutional right to privacy in

their medical information. *See Delie,* 257 F.3d at 315–17. This right protects the prisoner's interest in keeping certain medical information confidential. *See id.* As a corollary, however, the Third Circuit has cautioned that "a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen." *Id.* at 317. In short, a prisoner's constitutional right to privacy, including the preservation of the confidentiality of medical information, "is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." *Id.*

Specifically, an inmate's constitutional right may be curtailed by a policy or regulation that is shown to be "reasonably related to legitimate penological interests." *Turner v.Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64[ ] (1987). Courts must respect the administrative concerns underlying a prison regulation, without requiring proof that the regulation is the least restrictive means of addressing those concerns.

*Delie,* 257 F.3d at 317.

■ In the instant action, defendants are attempting to limit plaintiff's right to

---

8. In *Harrison,* the plaintiff complained to prison medical officials that he suffered severe tooth pain as a result of a cavity. *Harrison,* 219 F.3d at 134. The plaintiff requested that the cavity be filled. *Id.* After examining the plaintiff, however, prison medical officials "refused to fill the cavity on the ground that [plaintiff] was also afflicted by an unrelated carious non-restorable tooth, and that prison regulations required the non-restorable tooth to be extracted before [plaintiff's] cavity could be filled." *Id.* Plaintiff, on the other hand, did not want the non-restorable tooth pulled, "because it was causing him no pain and because he considered that he had no teeth to spare." *Id.*

*Harrison* concerned a motion by defendants for summary judgment based on qualified immunity. *Id.*

9. Although it is unclear whether the Third Circuit is in

agreement with the law of the Second Circuit, "that a prisoner has no right to choose a specific form of medical treatment," *see Harrison,* 219 F.3d at 140 (citing *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864, 867 (2d Cir.1970)), under these circumstances, where the court has concluded that the DOC's requirement is reasonably related to a legitimate penological interest, and the plaintiff has failed to present evidence that calls the policy of the DOC into question, the court will not allow plaintiff to substitute his desires and opinions for the professional judgment of prison officials, especially when the law of the circuit makes clear that considerable deference is to be afforded to the judgment of the correctional authorities.

privacy in his medical information by requiring plaintiff, as a precondition to receiving medical treatment, to consent to the disclosure of information obtained from plaintiff's psychological evaluation under three circumstances. First, defendants seek to require plaintiff to consent to disclosure of certain non-confidential information. Thus, the information for which plaintiff is required to consent to disclosure is, by definition, not confidential. Accordingly, such information could be disclosed by prison officials with or without plaintiff's consent and requiring plaintiff to consent to its disclosure can not be said to infringe upon his privacy.

Second, defendants seek to require plaintiff to consent to disclosure of his medical information if it is believed that plaintiff poses a threat to his own health and safety, the health and safety of others or the orderly operation of the prison facility. This requirement is specifically the type of institutional regulation contemplated and approved by the Third Circuit in *Delie* as a proper basis for infringing upon a prisoner's right to privacy in his medical information. *See Delie*, 257 F.3d at 317 (an inmate's right to privacy "is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security"). Accordingly, the court finds that requiring plaintiff to consent to disclosure of his medical information under these circumstances is reasonably related to a legitimate penological interest.

Finally, defendants seek to require plaintiff to consent to disclosure of his medical information, to the extent necessary, "to prepare reports or recommendations, or to make decisions, regarding any aspect of [plaintiff's] current or future custody, including, but not limited to, [plaintiff's] housing, work or program status, pre-release or parole." Under the relevant *Turner* factors, the court concludes that this requirement is reasonably related to legitimate penological interests.

First, in order for prison officials to provide safe and appropriate conditions of confinement, they have a legitimate need to gather and evaluate information that is relevant to an inmate's psychological condition. Based on the language of the form itself, it appears that this information plays an important role in designating the type of confinement a particular prisoner requires and to ascertain the circumstances under which it would be safe to allow that prisoner to interact with other inmates and prison staff.

Second, given the substantial deference afforded to penological decisions made by prison personnel, *see White*, 897 F.2d at 113, and the limited circumstances under which courts may consider alternatives to prison regulations, *see Delie*, 257 F.3d at 317, the court will not second guess prison authorities and devise alternatives to the regulation at issue.[10]

Under these circumstances, the court concludes that the requirement that plaintiff sign the consent form is reasonably related to a legitimate penological interest.

### III. CONCLUSION

For the reasons set forth above, the court finds that plaintiff has failed to establish a reasonable likelihood that he would eventually prevail on the issue of whether defendants took reasonable measures to abate the risk posed to plaintiff as a result of his need for Hepatitis C treat-

---

10. The plaintiff has not proposed any alternatives either. Instead, plaintiff rests on the absolutist position that he can not be forced to consent to the disclosure of any medical or personal information under any circumstances.

ment. Given that plaintiff has not established a reasonable likelihood of success on the merits, plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (doc. no. 96) is denied.

An appropriate order follows.

### ORDER

**AND NOW**, on this **10th** day of **December, 2002**, upon consideration of plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (doc. no. 96) and all replies and responses thereto, it is hereby **ORDERED** that plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (doc. no. 96) is **DENIED**.

**AND IT IS SO ORDERED.**