Charles ISELEY, Sr.,

v.

Martin DRAGOVICH; Martin Horn; Carol Dotter; Robert Bitner; Marva Cerullo; Renato Diaz; Laszlo Kiraly; CPS Inc; John Doe; ABC Inc.; XYZ Inc.; Dental Inc; Lt. Henrickson; Jane Doe; Frank Gillis; Kandis Dascani; Moe, Dr.; Wilma Sewell; Jane Dando; Brad Lorah; Jane Himman; Corrections Physician Services Inc.; Susan, Nurse; William Sewell

Charles Iseley, Appellant.

No. 03–2254.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 6, 2004.

Decided Jan. 6, 2004.

Charles Iseley, LaBelle, PA, pro se.

Patrick J. McMonagle, Office of Attorney General of Pennsylvania, Philadelphia, PA, Alan S. Gold, Gold, Butkovitz & Robins, Elkins Park, PA, for Appellees.

Before SLOVITER, NYGAARD and CHERTOFF, Circuit Judges.

## OPINION

PER CURIAM.

Appellant, Charles Iseley, a prisoner, appeals from an order of the District Court for the Eastern District of Pennsylvania granting summary judgment in the defendants' favor on his civil rights claims.

### I.

In 2000, Iseley filed a complaint pursuant to 42 U.S.C. § 1983, which was amended, alleging that prison officials from SCI–Mahanoy and SCI–Coal Township, certain

medical providers, and the former Secretary of the Pennsylvania Department of Corrections, violated the First, Eighth, and Fourteenth Amendments when they deprived him of medical care for treatment of dental pain and malocclusion, nearsightedness, asthma, and Hepatitis C. Specifically, he claimed that (1) his requests for ocular surgery (laser vision corrective surgery, or in the alternative corneal transplants) and orthodontics were wrongly denied; (2) the defendants would not allow him to maintain possession of the inhaler he uses to control his asthma while he was housed in the Restricted Housing Unit ("RHU") at SCI–Mahanoy; (3) in 1998–1999, the defendants wrongly refused to treat him for Hepatitis C because no such treatment was available at SCI–Mahanoy; (4) in 2000, the SCI–Coal Township defendants refused to allow Iseley to participate in the Hepatitis C protocol because he was within twelve months of his minimum release date; and (5) the defendants denied medical care in retaliation for his having filed grievances and lawsuits against them. He sought damages and injunctive relief. The defendants' initial summary judgment motions were denied without prejudice in April, 2001 and the case was suspended administratively pending the filing of Iseley's opposition brief. Iseley filed a three-volume response in opposition to the defendants' motions for summary judgment in March, 2002. On December 10, 2002, the District Court denied Iseley's motion for preliminary injunctive relief regarding access to Hepatitis C treatment,[1] granted defendants' motion for a stay of discovery,

directed the defendants to re-file their previously denied summary judgment motions by December 30, and gave Iseley until March 3, 2003 to respond. The defendants complied. Iseley did not. On April 3, 2003, the District Court granted summary judgment as to all defendants, after considering Iseley's previously filed three-volume opposition brief. Iseley timely appealed. Iseley then filed a reconsideration motion, which the District Court denied without prejudice for lack of jurisdiction,[2] and also filed a belated response opposing summary judgment.

As to Iseley's Eighth Amendment claims of deliberate indifference to his medical needs, the District Court found that Iseley's nearsightedness, dental pain, asthma, and Hepatitis C condition constituted serious medical needs under the Eighth Amendment, but that malocclusion, the dental condition of an imperfect bite, was not. Assuming that the defendants knew the substantial risks of serious harm posed to Iseley as a result of his serious medical conditions, the District Court held that no reasonable juror could find that the defendants failed to take reasonable measures to abate those risks. Specifically, the District Court found that the defendants acted reasonably in providing Iseley with corrective lenses to treat his nearsightedness instead of doing ocular surgery, and in treating his dental pain with cavity fillings and root canal work instead of orthodontics.

As for treatment of Iseley's Hepatitis C condition, the District Court addressed the

1. Iseley moved for preliminary injunction claiming that the defendants wrongfully denied him Hepatitis C treatment in February, 2001 because he refused to undergo a psychological evaluation and declined to sign the necessary consent form. The District Court's decision denying Iseley's motion for preliminary injunction is located at 236 F.Supp.2d 472, 475–76 (E.D.Pa. Dec.10, 2002).

2. We decline to remand Iseley's reconsideration motion for a decision on its merits because doing so would be futile. Iseley raised the same claims in that motion as he has raised on appeal. For reasons more fully discussed below, we find these arguments to be meritless.

claim that formed the basis for Iseley's preliminary injunction motion,[3] but not the claims regarding the SCI–Mahanoy defendants' denial of Interferon treatment in 1999, and the SCI–Coal Township defendants' denial of participation in the Hepatitis C protocol based on the minimum sentence rule. On the claim it considered, the District Court held that the psychological evaluation and consent form requirements were reasonably related to the defendants' legitimate penological interest of preventing potential serious side effects from the treatment, and that the defendants had not violated the Eighth Amendment because they had, in fact, taken reasonable measures to abate the risk posed by Iseley's Hepatitis C condition.

Finally, the District Court held that Iseley's Eighth Amendment rights were not violated by the implementation of a policy that effectively prohibited him from keeping his asthma inhaler in his cell while he was housed in the RHU at SCI–Mahanoy. At the time, no inmate in the RHU was allowed to self-medicate without the specific recommendation from a medical professional. In the case of inhalers, in particular, the prison sought to prevent inmates from using them to hide contraband. The District Court found that Iseley, a mild asthmatic in 1999, could obtain his inhaler from the officer on the pod simply by pushing the intercom button in his cell.

## II.

The District Court had jurisdiction over this matter by virtue of 28 U.S.C. §§ 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over an order granting summary judgment. *See Public Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64 (3d Cir.1990). As is well understood, summary judgment is granted when "no genuine issue [exists] as to any material fact and [when] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We will view the facts in the light most favorable to the nonmoving party and we will draw all inferences in that party's favor. *See Reitz v. County of Bucks,* 125 F.3d 139, 143 (3d Cir.1997). We may affirm on grounds other than that relied on by the District Court. *See Narin v. Lower Merion School District,* 206 F.3d 323, 333 n. 8 (3d Cir.2000).

■ As to Iseley's Eighth Amendment claims pertaining to the alleged denial of

---

3. Iseley's argument that District Court should never have decided his psychological evaluation/consent form claim at summary judgment because he raised it only in the preliminary injunction motion, and not in his Amended Complaint, is meritless. The District Court impliedly liberally construed Iseley's *pro se* amended complaint as including the new claim when it addressed injunctive relief. Thus, the claim was properly before the District Court on its merits, and we will affirm for the same reasons set forth by the District Court. *See* D. Ct. Op. at 10–20. We note that had Iseley not refused to be evaluated and to sign the consent form in February 2001, presumably he would have been receiving treatment by now. It appears that the main impediment to Iseley's treatment is his pervasive distrust of the prison system. Iseley firmly believes that if he agrees to the psychological evaluation and signs the consent form, depending on the results, he will be forced to undergo unwanted mental health treatment. He also believes that if he complies with the prison's most recent demands, the prison will just find some other excuse for excluding him from receiving Hepatitis C treatment. The record does not provide any rational basis for these fears. In fact, both Iseley and the Department of Corrections ("DOC") stand to benefit from Iseley's participation in the protocol. For its part, the DOC instituted the Hepatitis C protocol to prevent the "devastating human and cost implications" of allowing the disease to progress unchecked. *See* DOC Bureau of Health Services Memorandum dated February 8, 2000, at MA 129a. The medical and health benefit to Iseley is self-evident.

medical care for his dental, visual, and asthma conditions, we will affirm for substantially the same reasons as are set forth in the District Court's opinion. Specifically with regard to Iseley's claim that he was wrongly denied Hepatitis C treatment in 1999, Iseley does not dispute that his condition was monitored and that he received the appropriate diet, vitamin supplements, and pain medication for treatment of his Hepatitis C related symptoms. Iseley wanted Interferon treatment, however. Iseley argues that because the FDA approved such treatment for Hepatitis C in 1998, it should have been made available to him. Regardless of whether Interferon was an FDA approved treatment for Hepatitis C or not, according to the professional judgment of his treating prison physicians in 1999, Interferon treatment was contraindicated in Iseley's case because his condition had not yet progressed to the point where such treatment would have been appropriate. Iseley provided no material evidence to refute this fact.

■ Nor were the defendants deliberately indifferent to Iseley's serious medical needs when they denied him participation in the Hepatitis C protocol in 2000. The Hepatitis C treatment called for in the protocol takes one year to complete. The rationale for implementing the minimum sentence rule as part of the protocol is spelled out in the DOC's memo of February 8, 2000. *See* MA 127a–129a. Apparently, it is more detrimental to an inmate's health to discontinue or interrupt treatment prior to its completion, than it is to defer treatment until after his release. Thus, implementing the minimum sentence rule as a prerequisite to participation in the Hepatitis C protocol served a legitimate penological goal. We hasten to add that Iseley succeeded in overturning the application of the minimum sentence rule in his case through the prison's grievance process. In August, 2000, the Department of Corrections determined that Iseley would be eligible for the Hepatitis C protocol after all because it was unlikely that he would be released on parole based on his bad conduct record. Iseley's claim that the application of the minimum sentence rule violated the Equal Protection Clause of the Fourteenth Amendment lacks merit, as well. Iseley has not shown that others similarly situated were treated differently.

■ Iseley next contends that the District Court failed to decide his claim that the defendants denied him medical care in retaliation for having filed grievances and lawsuits against prison officials and employees. The District Court did not address the retaliation claim. We find the claim to be meritless. In *Rauser v. Horn,* 241 F.3d 330 (3d Cir.2001), this Court held that in order to prevail on a retaliation claim, a prisoner must prove that the conduct that led to the alleged retaliation was constitutionally protected, that he suffered some "adverse action" at the hands of prison officials, and that exercise of the constitutional right was a substantial or motivating factor in the challenged action. *See id.,* at 333–34. Prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons that are reasonably related to a legitimate penological interest. *Id.* at 334.

Assuming *arguendo* that Iseley met his initial burden under *Rauser* regarding the retaliatory denial of medical care, for all of the reasons set forth above and in the District Court's opinion, the defendants have shown that they would have arrived at the same decision regarding appropriate treatment for Iseley's dental problems, his nearsightedness, and for Hepatitis C condition in 1999, 2000 and 2001. As has already been discussed, these decisions were reasonably related to legitimate pe-

nological interests. Likewise, the DOC regulation prohibiting inmates from self-medicating in their cells in the RHU at SCI–Mahanoy, served a legitimate penological goal at the time.

Finally, Iseley claims that he did not have an adequate opportunity to engage in discovery prior to the District Court's decision granting summary judgment and the District Court erred by failing to consider his new responses to defendants' summary judgment motions which were filed a few days after the District Court entered judgment in the defendants' favor. Both claims lack merit. First, Iseley had more than ample time, at least two years, to conduct meaningful discovery. Second, the District Court did consider Iseley's comprehensive response opposing summary judgment filed in March 2002. The defendants' motions for summary judgment, filed on December 30, 2002, were verbatim reiterations of the defendants' earlier filed summary judgment motions. Our review of Iseley's earlier briefs opposing summary judgment and of his most recent submissions reveals that the earlier documents were more responsive to the issues raised in the defendants' motions for summary judgment, and that the new documents filed on April 7, 2003, added no new material facts or new meritorious arguments. Thus, Iseley was not prejudiced by the fact that the District Court did not have the opportunity to review Iseley's untimely response to the defendants' renewed summary judgment motions before it ruled on April 3, 2003.

Accordingly, we shall affirm the District Court's judgment. Iseley's "Second Motion for New Evidence," and his motion "to Supplement Reply Brief with New Evidence" are denied.