

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-3-2006

# Iseley v. Beard

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2108

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Iseley v. Beard" (2006). *2006 Decisions*. Paper 371.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/371

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-2108
_____

CHARLES ISELEY,
Appellant

v.

JEFFREY BEARD; WILLIAM STICKMAN; STANLEY FALOR;
DAN DAVIS; SHARON DELETTO; BRIAN HYDE; MICHAEL MOE;
AMERICAN SERVICE GROUP; PRISON HEALTH SERVICES, INC.;
BRUCE TEAL; JEAN BYASSEE; CARL KELDIE; MICHAEL
CATALANO; GERALD BOYLE

_____

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 02-cv-1709)
District Judge: Honorable Alan N. Bloch
_____

Submitted Under Third Circuit LAR 34.1(a)
OCTOBER 2, 2006

Before:    MCKEE, FUENTES AND NYGAARD,   Circuit Judges.

(Filed:  October 3, 2006)

_____

OPINION
_____

PER CURIAM

Charles Iseley appeals from the District Court's orders granting Defendants' motion for summary judgment. For the reasons that follow, we will affirm the District Court's judgment.

In 1983, Charles Iseley was convicted of numerous robbery and assault charges. He is currently incarcerated at State Correctional Institution at Fayette. Iseley suffers from numerous physical ailments. In 1998, he was diagnosed with Hepatitis-C ("HCV"). He also suffers from chronic fatigue syndrome, fibromyalgia, and rheumatoid arthritis. In 2000, Iseley filed a civil rights action under 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Pennsylvania, alleging, inter alia, that the failure of the Department of Corrections ("DOC") to offer him treatment for HCV constituted cruel and unusual punishment. In 2001, after the DOC changed its policy on HCV treatment, Iseley moved for a preliminary injunction to force the DOC to provide him with prescription drug treatment for HCV despite the fact that Iseley would not consent to psychological testing and limited disclosure as required by the DOC's treatment protocols. The District Court granted summary judgment to the defendants and we affirmed. See Iseley v. Dragovich, No. 03-2254, slip op. at 9 (3d Cir. Jan. 6, 2004)(nonprecedential opinion).

In 2002, while incarcerated at State Correctional Institution at Greene ("SCI-Greene"), Iseley again attempted to get treatment for his HCV. He requested pegylated interferon, a drug for the treatment of HCV, but was refused. Prison officials informed him that interferon, a different HCV drug, was the only treatment that would be available to him. Again, he refused to consent to psychological counseling and disclosure of his

2

medical records as required for treatment with interferon, and he was denied treatment. Medical personnel also informed counselors, prison guards and other prisoners that Iseley suffered from HCV.

Iseley also requested treatment for his other health problems. He requested treatment for his chronic fatigue syndrome, fibromyalgia, and rheumatoid arthritis, but never received any medical attention for those conditions. During this time, Iseley also informed medical personnel that he was allergic to the soap distributed to the inmates at SCI-Greene. Medical personnel gave him permission to purchase one bar of a different brand of soap every two weeks.

In October 2002, Iseley filed this pro se civil rights action in the United States District Court for the Western District of Pennsylvania. He brings this action against Pennsylvania state officers and employees[1] as well as the medical provider at SCI-Greene and its employees and officers.[2] His complaint listed numerous claims: that the failure of the prison authorities and doctors to treat his HCV, fibromyalgia, chronic fatigue syndrome, and rheumatoid arthritis constituted cruel and unusual punishment in violation

---

[1]Jefferey Beard, Secretary of DOC; William Stickman, Warden of SCI-Greene, and Grievance Coordinators Sharon Deletto and Dan Davis; and Brian Hyde, Healthcare Administrator at SCI-Greene ("Commonwealth Defendants").

[2]Prison Health Services, Inc. ("PHS"), American Service Group, Inc. ("ASG"), PHS's parent company, Bruce Teal, Chief Operating Officer of PHS, Jean Byassee, Chief Legal Counsel of PHS, Michael Catalano, Chief Executive Officer of ASG, Gerald Boyle, Chief Executive Officer of PHS, Carl Keldie, Chief Medical Officer of ASG, Stanley Falor, Medical Director at SCI-Greene and Iseley's treating physician, and Michael Moe, an unnamed psychiatrist at SCI-Greene ("Medical Defendants").

of the Eighth and Fourteenth Amendments; that the medical defendants' release of information regarding his HCV status violated his right to privacy; that he was denied medical treatment in violation of the Americans with Disabilities Act ("ADA"); that the refusal to treat his HCV was retaliation for his failure to consent to psychological treatment and disclosure of his medical information; and various state law claims.

The Commonwealth Defendants filed a motion to dismiss or for summary judgment arguing that the DOC policy regarding HCV treatment did not amount to cruel and unusual punishment and that none of them was personally involved in the other alleged actions. In January 2004, the District Court, adopting the Magistrate Judge's report and recommendation, granted the Commonwealth Defendants' motion for summary judgment. The Medical Defendants filed a separate motion for summary judgment arguing that Iseley failed to exhaust his administrative remedies. In March 2005, the District Court, adopting the Magistrate Judge's Report and Recommendation, granted the Medical Defendants' motion and also dismissed the remaining state law claims for lack of subject matter jurisdiction.

The District Court had jurisdiction over this matter by virtue of 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over an order granting summary judgment. See Helen L. v. DiDario, 46 F.3d 325, 329 (3d Cir. 1995). As is well understood, summary judgment is granted when "no genuine issue [exists] as to any material fact and [when] the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). We will view the facts in the light most

4

favorable to the nonmoving party and we will draw all inferences in that party's favor. See Reitz v. County of Bucks, 125 F.3d 139, 143 (3d Cir. 1997). We may affirm on grounds other than those relied on by the District Court. See Narin v. Lower Merion School District, 206 F.3d 323, 333 n.8 (3d Cir. 2000).

## Medical Defendants

A prisoner is barred from bringing an action under § 1983 or any other federal law "until such administrative remedies as are available have been exhausted." 42 U.S.C. § 1997e(a). The administrative remedies available to Pennsylvania prisoners are described in DC-ADM 804, and involve a three-step grievance process. First, a prisoner's grievance is submitted to the facility's grievance coordinator, DC-ADM 804 Part VI.B. If the problem is not resolved at the level of the grievance coordinator, then the decision may be appealed to the Facility Manager, DC-ADM 804 Part VI.C. Finally, an aggrieved prisoner may appeal this decision to the Secretary's Office of Inmate Grievances and Appeals, DC-ADM 804 Part VI.D. Only after a prisoner has gone through all of these steps has he exhausted his available administrative remedies. Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004).

According to the undisputed affidavit of Dan Davis, the grievance coordinator at SCI-Greene, Iseley did not comply with these requirements. (See Appellant's Br. App. 17.) Iseley filed grievances regarding his failure to receive treatment for his medical ailments and his soap allergy. He appealed those grievances to the SCI-Greene's Superintendent, but did not file any subsequent appeals to the Secretary's Office of

Inmate Grievances and Appeals. Thus, he did not exhaust administrative remedies, and his suit against the Medical Defendants cannot proceed further. See Nyhuis v. Reno, 203 F.3d 65, 78 (3d Cir. 2000).

Iseley does not dispute that he failed to appeal any of his grievances to the Secretary's Office of Inmate Grievances and Appeals. However, he claims that the Davis affidavit shows that there were no administrative remedies available to him, and thus, he had fulfilled § 1997e(a)'s exhaustion requirement. Although the Davis affidavit describes the grievance procedure described in DC-ADM 804, on two occasions there is a mistaken reference to DC-ADM 801, the grievance procedure for inmates facing discipline. Iseley claims that, since he was not facing discipline, the procedures of DC-ADM 801 were not available to him and the Davis affidavit's conclusion that "Mr. Iseley did not exhaust his administrative remedies pursuant to DC-ADM-801 [sic]" does not bar his suit. However, this argument is based on a misreading of Davis' Affidavit. It is clear from the rest of Davis' affidavit, where he names and describes the procedures under DC-ADM 804 in the context of Iseley's grievances, that the references to DC-ADM 801 are typographical errors and that Davis is describing Iseley's use of the procedure available under DC-ADM 804. According to the undisputed evidence in the record, Iseley failed to exhaust his available administrative remedies and his suit against the Medical Defendants is barred.

Commonwealth Defendants[3]

In order for a denial of medical care to rise to the level of an Eighth Amendment violation, it must constitute "unnecessary and wanton infliction of pain" or "deliberate indifference to the serious medical needs" of a prisoner. Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prove deliberate indifference, plaintiff must establish that prison officials were aware that the plaintiff faced a "substantial risk of serious harm," but disregarded "that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). This test provides considerable latitude to prison medical authorities, and courts will defer to their sound medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). Mere negligence or inadvertence is insufficient to show an Eighth Amendment violation. Id.

Iseley's claim that he was denied treatment for HCV is, based on his own admissions, not true. Rather, he refused interferon treatment because he would not consent to the release of his medical records and concomitant psychological treatment as required by DOC policy. Iseley claims that psychological treatment was not necessary for interferon treatment and that prison authorities' insistence that he submit to counseling forces him to either suffer the imposition of unwanted treatment, or be denied treatment

---

[3]The Commonwealth Defendants waived the affirmative defense that Iseley failed to exhaust administrative remedies because they did not raise it, in the District Court or here, and we will address Iseley's claims against them on the merits. See FED. R. CIV. P. 8(c); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

for a serious medical condition.[4]  He has raised this argument before, see Dragovich, No. 03-2254, slip. op. at 4 n.3, and we found it unpersuasive.  It is still unpersuasive.[5]  The DOC's requirement that prisoners undergoing interferon treatment submit to psychological evaluation and treatment is a reasonable inclusion in the HCV drug treatment protocol.  According to Iseley's own materials, side effects of interferon include severe depression and suicidal thoughts.  (See e.g. Objections to Magistrate Report and Recommendation, Appellant's Br. App. 11 Ex. 10.)  Because of these side effects, the DOC protocols for HCV treatment exclude those suffering depression, psychosis, bipolar disorder from interferon treatment.  (Appellant's Br. App. 16.)  The inclusion of psychological evaluation and counseling in the DOC's treatment protocol is an exercise of sound medical judgment; not, as Iseley contends, an instance where necessary medical treatment has been delayed or denied for a non-medical reason.  See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326 (3d Cir. 1987).  Iseley has a different opinion about the matter and has refused to participate in treatment, but the Commonwealth Defendants cannot be held responsible for his unwillingness to comply

---

[4]This argument is identical to Iseley's claim that he was retaliated against for refusing mental health care.  (Comp. ¶ 81.)

[5]The Commonwealth Appellees argue on appeal that these claims should be barred by collateral estoppel.  However, because the Commonwealth never raised the affirmative defense of collateral estoppel below, the argument is waived.  See Fed. R. Civ. P. 8(c); 47 Am. Jur. 2d Judgments § 637 (2006) ("The failure to plead or raise in a timely manner matters calling for the application of the doctrines of res judicata and collateral estoppel generally is regarded as a waiver.")

with a legitimate treatment protocol.

Summary judgment was also appropriate on Iseley's other Eighth Amendment claims. Unlike the DOC policy involved in his denial of HCV treatment claim, Iseley does not allege that any of the Commonwealth Defendants were involved in the denial of treatment for his fibromyalgia, chronic fatigue syndrome, rheumatoid arthritis, and soap allergy. He argues that they are nonetheless liable because they were aware of these conditions and did not act to secure him proper treatment. However, the Commonwealth Defendants are not medical professionals and cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by a prison doctor." See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); Spruill, 318 F.3d at 236 ("If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.")

Iseley's argument that the denial of treatment for his ailments violated the ADA fails as well. The ADA prohibits the exclusion of otherwise qualified participants from any program or benefits on account of their disability. 42 U.S.C. § 12132. A claim under the ADA requires that: 1) the plaintiff has a disability; 2) the plaintiff is otherwise qualified for the program sought or would be qualified if the defendant made reasonable modifications to the program, and 3) the plaintiff was excluded from the program solely by reason of his or her disability. See Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002, 1009 (3d Cir.1995). Iseley does not claim that he was excluded from any program

9

on the basis of his disability. Rather he claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions. See Bryant v. Madigan, 84 F.3d 246, 248 (7th Cir. 1997) (holding that "the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . [t]he ADA does not create a remedy for medical malpractice.")

Because there was no genuine issue of material fact and the Defendants were entitled to judgment as a matter of law, the District Court was correct in granting Defendants' motions for summary judgment. Accordingly, we will affirm the judgment of the District Court.